**EXHIBIT A**

**DECLARATION OF ERICA MAINE IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

I, Erica Maine, Special Agent with the Drug Enforcement Administration ("DEA") do hereby declare:

**Introduction and Agent Background**

1. I am a Special Agent ("SA") with the U.S. Drug Enforcement Administration ("DEA") and have been since June 11, 2017. As such I am a "federal law enforcement officer" pursuant to Rule 41 of the Federal Rules of Criminal Procedure, that is "a government agent … who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant."

2. As an SA with DEA, I have received specialized training in narcotics investigations from the DEA Academy in Quantico, Virginia. This academy consists of approximately 650 hours of comprehensive classroom training from the DEA in specialized narcotic investigative matters including, but not limited to, assets derived from narcotics trafficking and the investigation of individuals involved in the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. I worked on investigations into large-scale drug trafficking organizations in Phoenix, Arizona from January 2018 to April 2022 at the Phoenix DEA Divisional Office. I am currently assigned to the DEA Baltimore District Office, Strike Force Group 3 that investigates drug trafficking organizations and their ties to violence.

3. As an SA, I have performed various tasks, including but not limited to: conducting physical surveillance by observing and recording movements of persons suspected of trafficking drugs; interviewing witnesses, confidential sources ("CSs"), and sources of information ("SOIs") regarding the illegal trafficking of drugs and the distribution of money and assets derived from

illegal trafficking of drugs; and functioning as a case agent by supervising specific investigations involving the trafficking of drugs and the laundering of money.

    4.    While conducting drug investigations, I have interviewed persons involved in the distribution of illegal drugs.  I have consulted with other experienced investigators concerning the practices of drug-traffickers.  I have participated in two wiretap investigations, one as a co-case agent, by reading line sheets, monitoring live calls or having live calls interpreted, responding to actionable intelligence gained from intercepted communications, assisting in the arrests of intercepted targets, seizing narcotics from information gained through intercepted communications, authoring and preparing numerous affidavits for pen registers, telephone tracking warrants, mobile tracking warrants, residential search warrants, and cellular devices.

    5.    Through my training and prior experience in narcotics trafficking investigations and arrests, I am familiar with the actions, traits, habits, and terminology utilized by narcotics traffickers.  I am familiar with the ways in which drug traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct narcotics transactions.  Based on this familiarization, I know the following:

    a.    Drug trafficking is an ongoing and recurring criminal activity.  As contrasted with crimes against persons, which tend to be discrete offenses, drug trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity.

    b.    Drug traffickers often maintain on hand large amounts of both drugs and currency in order to maintain and finance their ongoing drug business, as well as paraphernalia used in the manufacture, packaging, preparation, and

  weighing of narcotics in preparation for trafficking, and that drug traffickers maintain these items where they have ready access to them.

 c. Drug traffickers often place control and ownership of assets (including real property) in names other than their own to avoid detection of those assets and locations by government agencies. Even though assets are in the names of other people, drug traffickers retain ownership, control, and use of the assets, exercising dominion and control over them.

 d. Drug traffickers must maintain on-hand large amounts of currency to finance their ongoing drug business.

 e. Drug traffickers often have unexplained wealth, assets, and a high standard of living with no reported income, which is probative evidence of crimes involving drug trafficking.

 f. Drug traffickers commonly possess—on their person, in their vehicles, at their residence, and/or inside their "stash locations"—adulterants, packaging and processing material for the preparation of controlled substances for sale.

## Purpose of This Declaration

1. This Declaration is submitted in support of the Verified Complaint for Forfeiture *In Rem* of assorted jewelry seized on or about July 27, 2023 from 536 Doefield Court, Abingdon, Maryland (Asset ID: 23-DEA-705748, the "Defendant Property").[1]

---

[1] The assorted jewelry includes the following items: a 10K white-gold diamond Cuban link chain; a 10K tri-color gold money bag diamond pendant; a 10K white-gold ladies diamond heart pendant; a platinum diamond wedding band; a 14K gold diamond wedding band; a stainless steel and 18K white-gold Rolex Oyster Perpetual watch; an 18K yellow-gold Rolex Oyster Perpetual watch; a stainless steel and 18K yellow-gold Rolex Oyster Perpetual watch; and a stainless steel, 18K yellow-gold, and 14K yellow-gold Rolex watch.

2. I submit that there are sufficient facts to support a reasonable belief that the Defendant Property constitutes: (1) "things of value" furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; or (2) proceeds traceable to such an exchange and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**Summary of the Investigation**

3. In May 2022, investigators assigned to the DEA Baltimore District Office were contacted by DEA agents in New Jersey regarding the planned pick-up of a large amount of currency in the Baltimore, Maryland area. New Jersey agents indicated that since 2017, they had been investigating a Mexican-based drug trafficking and money laundering organization that facilitated the movement of drug trafficking proceeds to Mexico, and that this pick-up was related to that investigation. That same month, the DEA Baltimore District Office joined the investigation and conducted two separate money pick-ups totaling approximately $400,000. During one of the pick-ups, investigators observed Vacshon Brown ("V. BROWN") deliver approximately $100,000 to a courier, who then delivered the money to a law enforcement officer acting in an undercover capacity. Following the money pick-ups, we initiated an investigation into V. BROWN.

4. During the course of the investigation, I found that V. BROWN has a lengthy history of convictions for violent crimes and narcotics trafficking offenses, including a June 1994 conviction for attempted murder, December 2000 convictions for possession with intent to distribute a controlled dangerous substance and possession of an illegal firearm, and March 2014 convictions for possession with intent to distribute a controlled dangerous substance and a firearms violation.

5. On or around July 27, 2023, pursuant to a search and seizure warrant issued by The Honorable A. David Copperthite, United States Magistrate Judge for the District of Maryland,

investigators searched V. BROWN's primary residence, located at 536 Doefield Court, Abingdon, Maryland. Both V. BROWN and his wife, Nakia Brown ("N. BROWN"), were present during the search.

6. During the course of the search, investigators found illegal narcotics and residue from illegal narcotics. In particular, investigators observed a white powdery substance scattered around the base, on the seat, and in the bowl of the toilet in the bathroom attached to the master bedroom shared by V. BROWN and N. BROWN. A field test of the powder provided a presumptive positive result for fentanyl. Investigators also found several clear, gallon-size plastic bags containing white powdery residue in the master bedroom. Later lab tests of the residue returned positive results for both fentanyl and cocaine. Based on my training and experience, the condition in which investigators found these narcotics and residue suggests that someone attempted to destroy—and possibly succeeded in partially destroying—evidence of narcotics by flushing them down the toilet.

7. In the master bedroom, investigators also found approximately $108,405 in U.S. currency, drug trafficking paraphernalia, multiple firearms, ammunition, body armor, and the Defendant Property. The U.S. currency was kept in various locations throughout the bedroom, and most of the currency was banded and stacked together, which—based on my training and experience—is consistent with how narcotics traffickers frequently store proceeds of their drug trafficking activity.

8. After the search, investigators arrested V. BROWN on multiple state-level charges, including illegal possession of a firearm and possession with the intent to distribute a controlled substance.

9. An independent appraisal of the jewelry comprising the Defendant Property concluded that the Defendant Property is valued, in total, at approximately $101,535. I determined that V. BROWN has a negative wage history in Maryland. A similar search for N. BROWN's reported wages in Maryland showed that, between 2016 and 2023 she reported annual wages of between $31,846 and $85,297.87. Based on my training and experience, the wage histories of both V. BROWN and N. BROWN are inconsistent with their lifestyle and are in particular inconsistent with the jewelry comprising the Defendant Property being purchased legitimately.

## Conclusion

10. Based on the foregoing facts and my training and experience, I maintain there is probable cause to believe that the Defendant Property constitutes: (1) "things of value" furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; or (2) proceeds traceable to such an exchange, and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 2 nd day of April, 2024.

_____
Erica Maine
Special Agent
Drug Enforcement Administration